to an impossibility to decide the issues of the case, but not on appellee's motion, not timely filed.

The motion to dismiss is overruled.

## On the Merits.

[2] The accountant must be held bound by the account she presented to the court. We are relieved from the necessity of giving consideration to any issues arising anterior to the filing of appellant's petition asking to have reversed the judgment appealed from in those respects that it amends her account. The opponent, W. B. Thompson & Co., has not answered the appeal, nor asked for the amendment of the judgment homologating the account.

We have read the judgment approving the account, and have given consideration to each item, and found no error.

The creditors who may be affected as to their interests in the changes and amendments made to the account in the court below are not before this court complaining either personally or through the administratrix. Only the administratrix complains of the amendments. We think those amendments were correctly made by the judge of the district court.

[3] We have read the evidence introduced on trial of the opposition in the lower court. It shows that the administratrix is frail and delicate, not accustomed to business, and therefore relied upon the advice of counsel and on the partner of her late husband. If under their advice anything was done which should not have been done, it was not disclosed, and consequently we can only affirm the judgment. In matter of mere details certain changes were made, and amendments. They will remain as they are, sustained by law and facts. Moreover, appellees, as before stated, are bound by the judgment. As to appellant, we have not found that he has good cause of complaint. The issues are of fact, and have been properly decided. We have found no error.

For reasons stated, the judgment is affirmed.

(61 South. 728.)

No. 19,701.

LARIDO v. PERKINS.

In re PERKINS.

(March 17, 1913. Rehearing Denied April 14, 1913.)

*(Syllabus by the Court.)*

1. FRAUDS, STATUTE OF (§ 144*)—EFFECT OF CONFESSING—VERBAL CONTRACT OF SALE.

A verbal sale of immovable property is good against the vendor or vendee who confesses it when interrogated under oath; and a verbal promise to sell such property stands upon the same footing, in that respect, as a verbal sale.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 351; Dec. Dig. § 144.*]

2. DISCOVERY (§ 79*)—INTERROGATORIES TO ADVERSE PARTY—CONCLUSIVE EFFECT OF ANSWERS.

Article 354 of the Code of Practice, to the effect that answers to interrogatories on facts and articles do not exclude adverse testimony and are to be weighed as other testimony, has no application in a case in which written evidence is required and such answers are elicited as a substitute therefor, as where the attempt is made in that way to establish title to real estate. In such case the answers, not being open to contradiction, are conclusive.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 99–102; Dec. Dig. § 79.*]

3. DISCOVERY (§ 79*)—INTERROGATORIES TO ADVERSE PARTY—CONCLUSIVENESS AND EFFECT.

Where a litigant relies upon an alleged verbal sale, or promise of sale, of real estate as the basis for his assertion that he occupied the property as a possessor in good faith, his failure to prove the sale or promise of sale, by means of interrogatories on facts and articles propounded to his opponent, carries with it a failure to sustain his assertion as to possession in good faith. "Sublato fundamento, cadit opus."

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 99–102; Dec. Dig. § 79.*]

4. EJECTMENT (§§ 132, 139, 142*)—IMPROVEMENTS—TAXES—RENTS.

The owner of real estate who recovers it from a possessor in bad faith may retain the

improvements, which are separable from the soil, on paying the value of the material and the price of the workmanship, or he may require such improvements to be demolished or removed at the cost of the evicted possessor. Such possessor is entitled to recover money expended in the payment of taxes, and owes no rent for improvements placed by him on the property. He is, however, liable for rent collected by him in the proportion that the value of the land, unimproved, bears to its value as improved by him.

[Ed. Note.—For other cases, see Ejectment. Cent. Dig. §§ 444–447, 449–452, 468, 470–477, 479–481, 483–501; Dec. Dig. §§ 132, 139, 142.*]

Certiorari to Court of Appeal, Parish of Orleans.

Action by Emile C. Larido, individually and as tutor, against Robert J. Perkins. A judgment for plaintiff was affirmed by the Court of Appeal, and defendant applies for certiorari or writ of review. Modified in part, affirmed in part, and remanded.

James Wilkinson, of Pointe à La Hache, for relator. A. B. Leopold and E. Howard McCaleb, both of New Orleans, for respondent.

MONROE, J. Plaintiff brought this suit for the recovery of a small piece of real estate, situated in Jefferson parish, which was acquired by him during the life of his late wife as community property, and which, he alleges, now belongs to him and his minor children. He alleges that defendant is in possession of said property, without any legal right, and refuses to surrender the same. He further alleges:

"In the alternative, that in his individual capacity, some time in the month of April, 1904, he agreed and promised to sell his interest in said property to defendant for the sum of $125 cash, but that the sale was never consummated and nothing was paid by said defendant, but, on the contrary, that said defendant abandoned the same, and never offered to complete said proposed sale nor to pay the price by reason whereof your petitioner * * * individually, claims a dissolution * * * of said agreement * * * because of nonpayment of price."

He prays for judgment decreeing the property to belong to him and his children, and condemning defendant to pay $650 as the revenues.

Defendant for answer alleges that in January, 1904, plaintiff, by verbal contract, sold him "the entire property" here claimed for $125; that he brought defendant his title deed, and instructed him to take charge and possession of said property and pay the taxes thereon, and that an act of sale was prepared whereby plaintiff was to convey said property to defendant; that it was then discovered that said property had belonged to the community which had existed between plaintiff and his deceased wife, and was owned, in indivision, by plaintiff and his minor children, and defendant informed plaintiff that, in order to sell the interest of the minors, it would be necessary to open the succession of their mother, and that the value of said interest would be largely absorbed in the expense; that the property was bringing no revenue, and that plaintiff requested defendant to hold and own his interest and keep and pay taxes on said property, assuring him that, when his children reached the proper ages, he would have them emancipated and convey a complete title, and that defendant has kept and owned said property and has paid the taxes thereon for five or six years amounting to $75, and has had a building erected thereon at a cost of about $700; that during that time he has not received over $100 of revenue, all of which has been expended in necessary repairs; that plaintiff has repeatedly been requested to complete the title, but that now, moved by cupidity and the desire to possess the improvements, which are of far greater value than the land, he seeks in bad faith to repudiate his agreement. Assuming the attitude of a plaintiff in reconvention, defendant alleges that he has repeatedly demanded a written title from plaintiff, and has tendered him $62.50 for his share in said property, and that he now desires that plaintiff

be compelled to execute a conveyance of said share on payment to him of said amount; and that defendant should be allowed to recover from plaintiff as tutor one-half of the amounts expended for taxes and improvements. He prays that plaintiff be required to answer certain interrogatories on facts and articles which are annexed to the answer, and, after hearing, that he be condemned to make title to an undivided half interest in the property, and, as tutor, to repay one-half the amount expended for taxes and one-half the value of the improvements, less one-half the revenues received. The interrogatories on facts and articles and the answers thereto will be reproduced in the opinion which follows this statement of the case.

Defendant, taking the stand as a witness, gave testimony to the following effect, to wit:

That in the latter part of 1903 plaintiff sold him the property in question by a verbal contract for $125, cash. At his suggestion, plaintiff took his title deed to Langridge, clerk of the court, in order to get him to draw up an act of sale; and thereafter Langridge brought to defendant the title deed and the act which he had prepared, being an act in the proper form for the conveyance of said property. Defendant then learned for the first time that plaintiff had acquired the property during the life of his wife, and that she had since died, and he sent for plaintiff, and, telling him that the opening of his wife's succession would be expensive in proportion to the amount of the minors' interest, offered to pay him one-half the purchase price agreed on, to which plaintiff replied that he did not want the money but only wanted to have the taxes, which he thought were very high, paid, and that defendant could pay him interest on the money, which defendant agreed to do. Plaintiff said that he would make a deed

for his one-half interest if defendant wished, but thought it unnecessary to go to the double expense of having two acts of conveyance. He told defendant the ages of his children, and was advised as to what would be necessary in order to convey title to their interest. Defendant sent for plaintiff several times, and talked to him about the property, and plaintiff always said that he was willing to transfer his half interest, but that he did not need the money, and was willing that defendant should retain it, provided he would pay interest and pay the taxes. Plaintiff was in the parish of Jefferson at least two years of the period in question, worked on defendant's place in 1908, and was engaged in fishing, just above defendant's place, in 1909. In January, 1910, defendant sent for plaintiff, and told him that he thought it would be better "to carry out that act of sale," and plaintiff then told him that he had changed his mind and was not going to sell the property, and that the buildings which had been erected on it belonged to him. Defendant had paid the taxes on the property from 1903 up to that time, but paid no more afterwards. The taxes were regarded by plaintiff as high, because, though he had paid but $100 for the property in 1897, it was assessed, in 1903, at $600, and the taxes amounted to $15.75. The property was vacant when, in, say, January, 1904, defendant took possession, and thereafter some fences were put up at a nominal cost, and a two-story house was erected, and at a later date a cistern. It would cost $800 or $900 to replace the house in its present condition, and $75 to replace the cistern. The fences cost but $10 or $12. The $125 agreed on was the full value of the property in dispute at the time of the agreement, but the building and improvements have enhanced its value by at least $700. Prior to the building of the house, the property yielded no revenue whatever. The lot measures 96

feet front by 384 feet in depth, and, save for the space occupied by the house, is covered with trees and brier bushes. Defendant has not received as much as $100 cash in the way of rental; several tenants left in debt, two of them at night. Defendant has spent $65 or $70 in making repairs.

On cross-examination defendant testified, in substance: That he is unable to say what the cistern cost originally, but that he estimates its value at $75; that he at one time had the property in question, with some other property adjoining, leased to Christie & Lowe (who were contractors engaged in government work); part of the agreement was that Christie & Lowe were to put up a house on the property for their foreman, and that, in the end, they and defendant were to agree upon a valuation which defendant was to pay for the house at the end of the lease. Defendant fixes the rental value of the property at $10 a month, but has never succeeded in collecting rent for more than two or three months at a time—only one tenant having stayed and paid for as much as three months. Christie & Lowe occupied the property for about three years. At least four times since 1904 defendant has had plaintiff to come to his office, and has talked to him about this property, and plaintiff has always said that he did not want the price of his half, but was willing to take the interest on the money, without stating the rate of interest; he has even said that he was willing to let the matter go on, so long as the taxes were paid.

The testimony so given was admitted subject to plaintiff's objections:

"That defendant * * * having required plaintiff to answer interrogatories on facts and articles under oath, and the answers to said interrogatories having been filed under oath and having disclosed that there was no sale of this property, the said Perkins is bound by the said answers and no testimony can be introduced for the purpose of contradicting, varying, or enlarging the answers to the interrogatories herein, and that no parol testimony is admissible to show title in defendant to the premises and property herein."

Plaintiff, having been called to the stand, gave the following testimony in rebuttal, to wit:

"Direct examination: Q. Did Mr. Perkins offer to pay you any money for this property? A. No. sir. Q. Did he ever tender you any money? A. No, sir. Cross-examination: Q. Did Mr. Perkins ever send to you to come to his office? A. Yes sir. Q. When was that? A. That was in 1910. Q. Last year? A. Yes sir. Q. Did you go? A. I went, by my own self, without being asked, in 1904, twice in 1905, twice in 1906, and it was always the same result."

We find in the record the following admission:

"It is admitted that defendant tendered to the plaintiff through his attorneys $62.50, with 6 per cent. interest from January 1, 1904, being one-half of the value of the property, and that plaintiff refused said tender after suit was filed."

The district court gave judgment for plaintiff, individually and as tutor, decreeing him and his children to be the owners of the property in dispute and ordering that they be put in possession, condemning defendant to pay them $325, with legal interest thereon from judicial demand, as rents and revenues, subject to a credit of $75, expended in the payment of taxes; and dismissing defendant's reconventional demand, at his cost. Defendant appealed, and the judgment so rendered was affirmed by the Court of Appeal, and the matter has been brought to this court by writ of review.

## Opinion.

The interrogatories on facts and articles which were propounded to plaintiff, and his answers thereto, are as follows:

"Int. 1. Did you not in the month of January, 1904, or shortly prior thereto, sell to Mr. Robert J. Perkins, defendant in this suit, the entire property you now sued for, for the price and sum of $125 cash? Ans. No. I did not sell, but I agreed in 1904 to sell the property to defendant for $125 cash.

"Int. 2. Did you not in accordance with said contract take your title, the title annexed to this answer as Exhibit B, and deliver same to Mr. Perkins?

"Ans. Yes; I gave him my title deed, but he refused to accept title and refused to pay, or carry out the promise of sale, and never tendered me any money, until some time after the filing of this suit when he tendered me, through my lawyers, $62.50 on January 5, 1911, a few days before filing the answer, but the tender was refused.

"Int. 3. Did you not tell him then and there to enter upon and possess said property?

"Ans. No.

"Int. 4. Did you not request him to pay the taxes on this property, and did he not do so until you desired to repossess yourself of this property?

"Ans. No; I did not request him to pay the taxes on the property. He did so voluntarily. He told me he paid the taxes for the first year, 1904; I did not know he paid the taxes for subsequent years until January, 1910, or thereabouts, when I was notified by the tax collector that the 1909 taxes had not been paid; thereupon I paid said 1909 taxes and discovered that the defendant paid the taxes for years subsequent to 1904 up to 1909, inclusive.

"Int. 5. Was not the act prepared before Mr. Langridge, notary public, for you to deed the entire property to Mr. Perkins, as stated in said unsigned deed, Exhibit B?

"Ans. No; not to my knowledge.

"Int. 6. Was it not then discovered that you only owned one-half of the property in your own right?

"Ans. Yes; but it was discovered by Perkins in 1904 that I did not own the entire property, but owned one-half in my own right, and that was why Perkins refused to take title or pay anything.

"Int. 7. Will you explain how it was you allowed Mr. Perkins to possess this property for so many years and to make improvements on it without objection? Ans. I was away from Jefferson parish most of the time. When I agreed to sell the property to Perkins in 1904, and notwithstanding he rejected the title and refused to pay anything or carry out any agreement, he (Perkins) made improvements. * * * The reason why he has held possession during these years is because I had no money or means to enforce my rights, which meant a lawsuit, as Perkins persisted in refusing to give me possession, which would have required a lawsuit."

[1] The Civil Code provides:

"Art. 2275. Every transfer of immovable property must be in writing, but, if a verbal sale, or other disposition, of such property, is made it shall be good against the vendor as well as against the vendee who confesses it when interrogated on oath; provided actual delivery has been made of the immovable property thus sold."

Under other provisions of the Code, the verbal promise to sell immovable property stands upon the same footing as the verbal sale. Articles 2462, 2440, 2275.

[2] The Code of Practice provides:

"Art. 354. The answers of the party interrogated are evidence, but they do not exclude adverse testimony, and shall be weighed by the judge as other testimony."

It is, however, well settled that the article thus quoted is to be construed with other provisions of law, and that, so construed, it authorizes oral testimony in contradiction of answers to interrogatories on facts and articles only when such testimony is otherwise admissible, and that, where such answers supply the place of written evidence, where such evidence is required, they cannot be contradicted by parol testimony. Wright-Blodgett Co. v. Elms, 106 La. 159, 30 South. 311; Rush v. Landers, 107 La. 553, 32 South. 95, 57 L. R. A. 353; Rester v. Powell, 120 La. 425, 45 South. 372.

[3, 4] For the purposes of the title, plaintiff's answers to the questions propounded to him must therefore be accepted as true, and, so accepted, they fall short of the confession contemplated by article 2275 of the Civil Code, and fail to prove a sale or enforceable promise to sell any part of the property in controversy to defendant. It is well settled that one cannot recover damages for the nonperformance of a contract the existence of which he fails to establish in the manner here attempted (Bauduc v. Conrey, 10 Rob. 466; Marionneaux v. Edwards, 4 La. Ann. 103), and the principle is equally applicable where a litigant relies upon such unproved contract as the basis of the assertion that he occupied the property said to have been the object thereof as a possessor in good faith. "Sublato fundamento, cadit opus." We are, however, of opinion that, though defendant must be held to have been a possessor in bad faith, he has been condemned for more than the facts warrant. His estimate of $10 a month as the rental value of the property related to its value as im-

proved by the house, cistern, and fencing placed there by, or through, him, not earlier, as we think, than 1905, and even that estimate was not sustained by the result, as he succeeded in collecting only $100, and it is not shown or suggested that plaintiff could have done any better. Before the improvements were placed on it, plaintiff had paid taxes on the lot and had derived no revenue from it whatever, and we find no reason to believe that, without the improvements, it would have yielded any revenue during the period of defendant's possession. The law applicable to the question presented may be stated as follows:

"He to whom property is restored must refund to the person who possessed it, even in bad faith, all he has necessarily expended for the preservation of the property." C. C. 2314.

"When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same. * * * If the owner keeps the works, he owes, to the owner of the materials, nothing but the reimbursement of their value and of the price of workmanship, without regard to the greater or less value which the soil may have acquired thereby." C. C. 508.

"Compensation for improvements cannot be claimed by a possessor in bad faith until the owner elects to retain them, and the possessor owes no rents for his improvements until they are paid for"—citing Citizens' Bank v. Maureau, 37 La. Ann. 861; Kibbe v. Campbell, 34 La. Ann. 1163; Quaker Realty Co. v. Bradbury, 123 La. 24, 48 South. 570.

Plaintiff is therefore entitled to retain the improvements placed on the land by defendant on paying the value of the material and the price of the workmanship, or he may require defendant to demolish said improvements or remove them at his own expense. Defendant is entitled to recover the amount disbursed by him in paying taxes upon the property, and owes no rent for the improvements placed thereon by him. He is, however, liable for the rental collected by him in the proportion that the value of the lot, without the improvements, bears to its value with the improvements, or, say, as 125 to 925.

It is therefore ordered, adjudged, and decreed that the judgment here made the subject of review be affirmed, in so far as it decrees plaintiff, individually and as tutor to be the owner, entitled to possession of the land herein claimed by him, allows defendant $75 in reimbursement of the amount expended by him in payment of taxes, and condemns defendant for the costs of the district court, and that said judgment be amended, by reducing the amount allowed plaintiff as rents and revenues from $325 to $13.50, with interest. It is further ordered that in all other respects said judgment be set aside; that plaintiff be required to elect within a delay to be hereafter fixed whether he will retain the improvements placed, or caused to be placed, by defendant upon the land in dispute, on paying the value of material and price of the workmanship, or will require the same to be demolished or removed at the cost of the defendant; that the right of defendant to remove said improvements in the event plaintiff elects not to retain them be reserved; and that the case be remanded to the district court for further evidence and adjudication upon the subject of said value and price. It is further decreed that the costs of the appeal and of this application be paid by plaintiff.