Frank T. KURZWEG and Frank Turner Kurzweg, Jr., Plaintiffs–Appellants,

v.

Gretchen E. Kurzweg MARPLE and First National Bank of Commerce, Defendants–Appellees.

No. 87–3615.

United States Court of Appeals, Fifth Circuit.

April 7, 1988.

Joseph S. Russo, Jefferson, La., for plaintiffs-appellants.

Steven W. Usdin, Susan G. Talley, Marjorie Niset Neufelf, New Orleans, La., for First Nat. Bank of Commerce.

Clyde P. Martin, Jr., Thomas M. Gereighty, New Orleans, La., for Gretchen E. Kurzweg Marple.

Before RUBIN, KING, and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Family disputes about property generate long-lived litigation frequently requiring more than a single legal battle. This is the second diversity-based lawsuit between a father and his son, on the one hand, and their daughter and sister on the other, involving property previously donated to the daughter by her father and a trust created for the daughter by her grandfather. The first suit was compromised and ended with a consent decree. Contending that their daughter-sister failed to carry out their agreement, the father and son now sue her and a bank that was trustee of a trust held for her benefit. The district court imposed a merciful armistice by holding the claims against the family member barred by res judicata and dismissing the claims against the bank for failure to state a claim for which relief could be granted. We affirm that judgment, relying in part on somewhat different grounds, and impose sanctions against the father and son for appealing the district court's judgment dismissing the trustee bank, because the appeal of that part of the judgment was frivolous, presenting no arguable basis for appeal.

I.

In 1983, Gretchen E. Kurzweg, who was then 22 years old, sued her father, Dr. Frank T. Kurzweg, and others, contending that he had secreted and converted funds belonging to her. She sought an accounting for the assets of the Frank T. Kurzweg Inter Vivos Trust, a trust established for her benefit by her father shortly after her birth. She also sought an accounting from her father for his actions as a co-trustee of a testamentary trust that had been created for her benefit by Victor J. Kurzweg, Dr. Kurzweg's father and Gretchen's grandfather, and for income from that trust that she said her father had converted. The assets of the Victor T. Kurzweg Trust included stock in Consolidated Companies, Inc., and several other family-held corporations, and Gretchen alleged that her father had received the dividends from these stocks. She also sought an accounting for other funds and "a return of all funds and assets held or in possession of, by defendant, belonging to complainant, [and] a return to complainant of all personal property belonging to her."

A pretrial conference was held on October 18, 1984. The parties agreed that the Victor Kurzweg Trust provided that Gretchen was to begin receiving income from that trust at age 21, which she had attained on December 5, 1981, and was at the same age to receive all of the corpus and income of the Frank Kurzweg Inter Vivos Trust. They also stipulated that in September, 1982, Gretchen had executed a one-page document, which was witnessed but not notarized, that purported to transfer all of her assets, including her rights to the Victor Kurzweg Trust and to the assets of the terminated Frank Kurzweg Inter Vivos Trust, to her father and her brother, F. Turner Kurzweg, Jr. Gretchen however, disputed the validity of this transfer, claiming that she had signed it under duress from her father. Gretchen also disputed the validity of a transfer made four months later, in 1983, in which Dr. Kurzweg, using a 1977 power of attorney, had donated all of her assets to a new inter vivos trust for Gretchen's benefit, naming himself and Kurzweg, Jr., as trustees.

Gretchen argued that all of the income from the Victor Kurzweg Trust and all of the assets of the Frank Kurzweg Trust had been received by Dr. Kurzweg but that he had never exercised any incidents of ownership over the assets or formally accepted their donation to him and that the donation was therefore voidable. Finally, she asserted that she owned real estate that was not mentioned in the transfer to the inter

vivos trust created in January 1983, contending that her father controlled and claimed ownership of this property.

Dr. Kurzweg and Kurzweg, Jr., asserted that the transfer to them of Gretchen's property and the later transfer to the 1983 inter vivos trust were valid and that they owed no accounting to Gretchen. Aside from the issues concerning the validity of the 1982 transfer and the creation of the 1983 inter vivos trust, the contested issues were whether either Dr. Kurzweg or Kurzweg, Jr., was in possession of property belonging to Gretchen and whether either owed Gretchen an accounting.

Before the pretrial conference was held, a firm of accountants retained by Dr. Kurzweg and Kurzweg, Jr., had prepared a statement of Gretchen's assets and liabilities as of December 31, 1982. This included the assets of the Victor J. Kurzweg Trust. Among the liabilities the statement listed, "Note Payable—Other $47,222.22." Another firm, retained by Gretchen, had prepared a financial statement of her assets and liabilities as of December 31, 1983, showing property in four categories: (1) Not in dispute—in control of Gretchen Kurzweg; (2) Ostensibly in control of G. Kurzweg but in dispute; (3) In registry of court—ownership in dispute; and (4) In control of Dr. Frank T. Kurzweg—ownership in dispute. This statement also showed as a liability of Gretchen "Notes Payable Dr. Frank T. Kurzweg $47,222." Both statements were attached to the pretrial order.

A week after the pretrial conference, on October 25, 1984, the lawyers for the parties signed a letter that set forth the terms of a compromise settlement. The parties thereafter submitted jointly agreed Findings of Fact and Conclusions of Law to the district court. Adopted verbatim by the court on December 21, 1984, these recited that the September 1982 transfer to the male Kurzwegs was invalid, the 1983 inter vivos trust was null and void, and "as a matter of law, the parties hereto are entitled to a partition of the property in controversy in this litigation, including all real property as well as all other properties, and

the Court so orders a partition of all properties in controversy herein."

On the same day, the district court signed a judgment that had been prepared by the parties. It placed Gretchen in possession of described properties and recognized her as "the income beneficiary of the Victor Kurzweg Trust," ordering Dr. Kurzweg to "withdraw" as a trustee of that trust. It also ordered that Dr. Kurzweg and Kurzweg, Jr., pay $531,455 to Gretchen and that out of these funds, Gretchen create a spendthrift trust of at least $500,-000, to terminate on her 35th birthday. It placed Dr. Kurzweg in possession of a number of stocks, including various certificates of Consolidated Companies, Inc., and placed each of the parties in possession of described real estate and minerals. While the decree recognized that Gretchen was a beneficiary of the Victor Kurzweg Trust, it said nothing about the assets of that trust, nor did it mention any of the debts between the parties.

Peace did not long abide. In March 1987, Dr. Kurzweg and his son sued Gretchen (now Gretchen Marple) and the First National Bank of Commerce, a New Orleans bank that served as co-trustee of the Victor Kurzweg Trust and held its funds. The father-and-son's complaint invokes Rule 60(b) as well as diversity jurisdiction, refers to the prior compromise, and then asserts that, in addition to the matters agreed to in the consent decree and the compromise letter, "there was an oral agreement between the parties that all of the real property and real rights owned by the Victor Kurzweg Trust for the benefit of Gretchen E. Kurzweg Marple would be purchased by Dr. Frank Kurzweg at the then fair market value."

The complaint also recites that Gretchen has refused to perform her obligation with respect to certain stocks and has "failed to respond to plaintiffs' offers to purchase all of Consolidated Companies, Inc., stock held in the Victor Kurzweg Trust for her benefit, after plaintiffs offered to pay the fair market value of said stock." It also asserts that "she failed to acquire said stock from the Victor Kurzweg Trust so that

said agreement could be complied with, as she agreed to do." It alleges "on information and belief" that the trustee of the Victor Kurzweg Trust had sold all of the Consolidated stock held in trust "when said Company was sold by all family members as a going concern in December 1986," and seeks as damages from Gretchen, among other things, "[t]he difference between the fair-market value of the Consolidated Companies, Inc., stock as closed corporation stock held by a minority stockholder (less than $29 per share) and what said stock was sold for when all of the stock of said Company was sold by all family members and the Company and its good will was sold as a going concern, which was approximately $84.00 per share."

Finally, the complaint asserts that Dr. Kurzweg has "discovered" a $47,222 loan Gretchen owed him that he "inadvertently overlooked in the settlement of October 25, 1984." The complaint then prays that the plaintiffs be awarded damages against Gretchen, that Dr. Kurzweg be awarded judgment for the $47,222 loan plus interest, and "that the defendants be ordered to convey all property held by the Victor Kurzweg Trust ... still in its possession at the fair-market value thereof as of October 25, 1984."

Attached to the complaint is the letter signed on October 25, 1984, by counsel for Gretchen and counsel for Kurzweg and Kurzweg, Jr., but not by the Bank or its counsel, stating that the first suit is settled and outlining the terms of the settlement. The letter briefly states the terms of the December 1984 judgment entered as a consent decree by the district court. Between paragraphs whose substance was incorporated into the judgment, the letter contains this paragraph, which the judgment did not reflect:

> It is also understood that Dr. Kurzweg *has the option to purchase* all of the Consolidated Companies, Inc.'s stock in the Victor Kurzweg Trust as well as any stock of all of the family's closely held corporations that the Victor Kurzweg Trust may have—all at fair market value. [Emphasis added.]

Gretchen and the Bank each filed a motion to dismiss for failure to state a claim for which relief could be granted, and Gretchen also filed a motion to dismiss on the basis of res judicata.

The district court dismissed the complaint against Gretchen on the basis of res judicata, explaining, after denying a motion for a new trial, that "the matters that are asserted in this litigation [were] the subject of negotiation which resulted in a consent judgment in the earlier litigation and they are indeed res judicata." Concerning the options to purchase stock held in the trust, in particular, the district court stated that "the consent judgment reflected that the Doctor chose not to exercise the option." It dismissed the complaint against the Bank for failure to state a claim for which relief could be granted.

## II.

We first summarize the rules that control the various legal issues raised by the parties:

### A.

A motion to dismiss asserts the legal insufficiency of the complaint. Because "[c]ases are generally to be tried on the proofs rather than the pleadings,"[1] we follow the accepted rule that, as the Supreme Court said in *Conley v. Gibson*,[2] "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In ruling on such a motion, the district court cannot go beyond the pleadings, for if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."[3]

1. *DeLoach v. Crowley's, Inc.*, 128 F.2d 378, 380 (5th Cir.1942).

2. 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

3. Fed.R.Civ.Proc. 12(b).

## B.

In Louisiana, a state with a civil rather than common law heritage, private trusts were not recognized until the passage of the first Trust Estates Law in 1938. This was replaced by the Louisiana Trust Code, adopted in 1964. To adapt the trust concept to Louisiana law as much as possible, the Code does not accept the concept of divided title, equitable and legal, but requires that title to trust property vest in the trustee, not the beneficiary.[4] Consequently, only the trustee may sell or agree to sell property held in trust.[5] The Trust Code forbids a trustee as an individual to "directly or indirectly buy or sell property for the trust from or to himself or his relative."[6] A trustee who deals with a beneficiary or the trustee's own account must deal fairly with her and communicate to her all material facts in connection with the transaction that the trustee knows or should know.[7]

The terms of the Victor Kurzweg Trust designate it a spendthrift trust, which suffices to restrain the beneficiary from voluntarily alienating her interest in the trust.[8] Even if the trust does not forbid the beneficiary to alienate her interest, the transfer of that interest must be in writing, executed before a notary public and two witnesses (an "authentic act") or in the presence of two witnesses and acknowledged before a notary public (an "act under private signature, duly acknowledged").[9]

To the extent property of a trust is immovable, the requirement of a writing is reinforced by Article 1839 of the Louisiana Civil Code (formerly Article 2275), which requires a transfer of immovable property to be made in writing and recognizes an oral transfer only if "the transferor recognizes the transfer when interrogated on oath," a situation not present here. The same requirement, that the agreement be in writing, is applicable to contracts or options to sell immovable property.[10]

## C.

■ Concerning the preclusive effect of the prior judgment, the parties have cited only Louisiana authority, which accords the doctrine of res judicata a relatively narrow scope because of the state's civil law heritage.[11] In diversity cases in this circuit, however, while state law determines the preclusive effect of a prior state court judgment, federal law determines the preclusive effect of a prior federal diversity judgment such as was rendered here.[12]

■ Under the federal law of res judicata, a prior judgment rendered by a court of competent jurisdiction bars a subsequent cause of action between the same parties as to not only all matters litigated in the first suit, but also all matters that could have been litigated regarding the same

4.  La.Rev.Stat.Ann. 9:1731, 1781. *See Succession of Hines,* 341 So.2d 42, 45 (La.App.3d 1976); *Reynolds v. Reynolds,* 388 So.2d 1135, 1141 (La. 1980); *see generally* Gerald Le Van, Louisiana Counterparts to Legal and Equitable Title, 41 La.L.Rev. 1176 (1981).

5.  La.Rev.Stat.Ann. 9:1731, 1781. *See Succession of Hines,* 341 So.2d at 45; *see generally* L. Oppenheim & S. Ingram, 2 Louisiana Civil Law Treatise: Trusts §§ 344–345 (1977).

6.  La.Rev.Stat.Ann. 9:2085.

7.  La.Rev.Stat.Ann. 9:2083.

8.  La.Rev.Stat.Ann. 9:2007, 9:2002.

9.  La.Rev.Stat.Ann. 9:2003.

10.  La.Civ.Code Ann. art. 1839; *see also* Note, Writing Requirements and the Authentic Act in Louisiana Law, 35 La.L.Rev. 764, 766 & n. 18 (1975) (citing cases); *Hoth v. Schmidt,* 220 La. 249, 56 So.2d 412, 412 (La.1952); *Suthon v. Cambon Bros.,* 159 La. 134, 105 So. 252 (1925); *Larido v. Perkins,* 132 La. 660, 61 So. 728 (1913); Leon Sarpy, Form in Louisiana Contracts Involving Rights in Property, 14 Tulane L.Rev. 16, 25 (1939).

11.  *Welch v. Crown Zellerbach Corp.,* 359 So.2d 154, 156 (La.1978).

12.  *Commercial Box & Lumber Co. v. Uniroyal, Inc.,* 623 F.2d 371, 373 (5th Cir.1980); *see also Precision Air Parts v. Avco Corp.,* 736 F.2d 1499, 1503 (11th Cir.1984); *cf. Aerojet–General Corporation v. Askew,* 511 F.2d 710, 715–18 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed. 2d 137 (1975).

cause of action.[13] The same principle applies to consent decrees.[14]

In determining whether the second cause of action is the same as the first, we have variously asked whether the prior right, duty, and wrong are the same in the second action as in the first[15] and whether the second claim arose out of the same transaction or series of connected transactions as did the first.[16] In cases in which a plaintiff asserts a claim he might have advanced as defendant in a prior suit, we may also draw guidance from Federal Rule of Civil Procedure 13(a), which provides that a party must bring such a counterclaim in the initial suit, or else lose it forever, "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require the joinder of third parties over whom the court cannot assert jurisdiction.

### III.

■ The complaint patently fails to state a claim against First National Bank of Commerce for which relief could be granted. It asserts that the Bank is a trustee and thus, under Louisiana law, had title to the Consolidated stock and the other assets of the trust. It asserts that the Bank has sold the Consolidated stock, without intimating that the Bank committed any impropriety in making the sale. It seeks a judgment against Gretchen for damages and an order commanding her to perform certain acts, but it seeks no relief against the Bank except for an order to convey the property "held by the Victor Kurzweg Trust still in its possession" to the plaintiffs at its fair market value as of October 25, 1984. Since, however, the Bank has

title to the assets in question, and it is not alleged that it ever agreed to sell them, at fair market value or any other price, the complaint fails to allege any basis on which the relief against the Bank that is prayed for could be granted.

The initial brief filed by Dr. Kurzweg and Kurzweg, Jr., proceeded entirely on the erroneous assumption that the district court had based its dismissal of the Bank on res judicata. Upon being told at oral argument that this was incorrect, counsel for Dr. Kurzweg and his son attempted to find a tenable ground on which to challenge the dismissal of the Bank by advancing the theory that if they prevailed against Gretchen, they might then assert her rights as beneficiary of the trust.

The Bank, however, would have had no responsibility for satisfying the judgment if Gretchen refused to do so and the judgment creditor then sought execution of the judgment against her interest in the trust. A judgment for damages against Gretchen could be satisfied from trust assets only to the extent permitted by Louisiana law and only after obtaining a proper writ of execution. Article 2004 of the Trust Code, as amended in 1987, permits a creditor of the beneficiary of a trust to seize the trust's income or principal only to the extent it is subject to voluntary alienation by the beneficiary or if the trust is self-settled.[17] This provision, which increased the protection given the beneficiary of a spendthrift trust, governs seizures of trust property occurring after July 3, 1987[18] and does not impair any vested rights of Dr. Kurzweg or his son.[19] As we have noted, the Victor Kurzweg Trust is a spendthrift trust, and Gretchen therefore could not voluntarily

---

13. *Commercial Box & Lumber,* 623 F.2d at 373 (*citing Johnson v. United States,* 576 F.2d 606, 611 (5th Cir.1978)); *Moch v. East Baton Rouge Parish School Board,* 548 F.2d 594, 596 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977).

14. *United States v. Jefferson County,* 720 F.2d 1511, 1517 (11th Cir.1983).

15. *Commercial Box & Lumber,* 623 F.2d at 374 (*citing Kemp v. Birmingham News Company,* 608 F.2d 1049, 1052 (5th Cir.1979)).

16. *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 560–61 & nn. 4–6 (5th Cir.1983) (en banc) (*quoting* Restatement (Second) of Judgments § 24 & Comment A (1982)).

17. La.Rev.Stat.Ann. 9:2004.

18. *See In re Prejean,* 64 B.R. 71, 73 (Bkrtcy.W.D. La.1986).

19. *Cf. Hooter v. Wilson,* 273 So.2d 516, 522 (La. 1973).

alienate its assets, nor could the Bank pay out the trust assets to satisfy a judgment against her.

Dr. Kurzweg and Kurzweg, Jr., argue that the joinder of the Bank is in the nature of a citation as garnishee so that any judgment in their favor may be satisfied. Article 2411 of the Louisiana Code of Civil Procedure, however, provides for garnishment only after the creditor has obtained a judgment and a writ of execution, in Louisiana a writ of fieri facias. Counsel has cited no case that authorizes a plaintiff who asserts an unsecured claim to anticipate the possibility of obtaining a judgment and a fieri facias and thereby join a party who holds the defendant's assets in the initial claim.

■ Insofar as the plaintiffs seek to have the Bank convey property to them because Gretchen agreed to do so, they urge that, in effect, the beneficiary of a spendthrift trust can obligate the trustee to sell assets of the trust, a notion entirely incompatible with the spendthrift-trust concept. Insofar as they allege that Gretchen should have acquired the Consolidated stock from the Bank and then conveyed it to Dr. Kurzweg, they seek a transaction that they do not allege the Bank has agreed to.

It is completely irrelevant that the Bank had considered the trust's holdings in Consolidated stock disproportionate and had in April 1984 obtained Gretchen's authorization to continue to hold the stock. This might have meant that the Bank as trustee would have sold the stock anyway or that it would have sold the stock to Dr. Kurzweg had Gretchen asked it to do so. It does not follow that the Bank would, or should as a fiduciary, have authorized her to negotiate the sale and fix the price, or that it would convey the stock to her designee for a price fixed by her. Even if the Bank would have done all of these, it would have been the seller, not Gretchen, and it would not have been bound by her agreement to sell.

Shifting ground once again, in response to the Bank's motion for sanctions, Dr. Kurzweg and Kurzweg, Jr., assert that the issue is "whether there was a valid transfer of the trust rights of the beneficiary which must be recognized by the trust." The complaint, however, does not assert that Gretchen had transferred her "trust rights," and indeed, as the beneficiary of a spendthrift trust, she had no right to do so.

The district court therefore properly dismissed the Bank because the complaint failed to state any claim for which relief could be granted in favor of the male Kurzwegs, against it either individually or as trustee of the Victor Kurzweg Trust.

■ The Bank has filed a motion for sanctions, seeking reimbursement of its attorney's fees and costs on the basis that the appeal against it is frivolous. We agree that the appeal completely lacks arguable merit and, in accordance with Fed. R.App.P. 38, grant the Bank's motion. Not only is there no colorable ground for challenging the district court's ruling, but in addition, the appellants did not even address in their initial brief the grounds for the dismissal of the claims against the Bank. Because the Bank has been forced to respond to a frivolous appeal, the appellants are required to reimburse it for its costs and attorney's fees.[20]

Dr. Kurzweg and Kurzweg, Jr., resist the motion by quoting at length from our recent en banc opinion in *Thomas v. Capital Security Services, Inc.*[21] *Thomas* deals only with the imposition of sanctions by a district court for violation of Federal Rule of Civil Procedure 11. The Bank seeks sanctions not for violation of that rule but for the filing of a frivolous appeal.

In connection with the amount to be awarded as sanctions, the Bank has filed an affidavit detailing the time spent by its counsel, the hourly rate charged by coun-

---

**20.** See *Metallurgical Industries, Inc. v. Fourtek, Inc.,* 790 F.2d 1195, 1208–09 (5th Cir.1986); *Hagerty v. Succession of Clement,* 749 F.2d 217, 221–22 (5th Cir.1984), *cert. denied,* 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985).

**21.** 836 F.2d 866 (5th Cir.1988) (en banc).

sel, and the costs expended. Dr. Kurzweg and Kurzweg, Jr., challenge the amount sought solely by asserting: "Mover says it has been charged with nothing; yet, it says it has incurred attorney fees in the amount of $5,104 in defending against nothing." This argument is as untenable as the appeal itself. Certainly the Bank could not sit idly by and let the appeal against it go unchallenged. The listed time, hourly rates, and expenses all appear reasonable. Accordingly, we affirm the judgment in favor of First National Bank of Commerce and in addition award it $5,104 in attorney's fees and costs. In view of the fact that this includes the costs usually taxable, no additional costs shall be taxed in favor of the Bank.

### IV.

■ Dr. Kurzweg asserts one claim that does not relate to property now or formerly held by the Victor Kurzweg Trust—the note due Dr. Kurzweg from Gretchen for $47,222.22. The district court found that this claim was barred by the division of assets to which the parties agreed in settling the earlier suit for an accounting.

Dr. Kurzweg and Kurzweg, Jr., argue that the parties mistakenly failed to take the note into account in computing the amount to be paid Gretchen in cash. The prior suit, however, sought a complete accounting, not limited to the assets of the Victor Kurzweg Trust, and "a return of all funds and assets held ... by defendant, belonging to complainant." If Gretchen owed a debt to her father, this should have been considered in the accounting, for it would be natural for the decree partitioning the properties between the parties to consider any such debt as an offset against Gretchen's claims. Indeed, each of the separate informal accounts included the note. It did not therefore escape attention. The claim based on the note therefore bears the sort of "logical relationship" to the accounting that brings it within the authority

of Rule 13(a) as arising from the same series of transactions as did the first suit.[22]

As we have noted, Dr. Kurzweg also invokes Rule 60(b). That rule by its terms relates to relief upon motion from the terms of a judgment. Such a motion must be filed in the suit in which the judgment was rendered. We express no opinion, therefore, concerning the merits of such a motion.

### V.

The parties never litigated in the first suit the contention that Gretchen agreed orally, during the course of negotiations in settling the first suit, to sell her father the Consolidated stock and other assets of the Victor Kurzweg Trust. Neither the complaint nor the pretrial order in the first suit mentions the agreement, of course, for it was reached, if at all, only as part of the settlement of that suit. Nor is it relevant, under res judicata principles, whether the parties *could* have litigated any differences concerning the option agreement before entry of the consent decree, for as to this property, the relevant causes of action are patently different.[23] In the first suit, Gretchen sought relief from her father and brother for conversion of her property and violation of her father's fiduciary obligations; in the second, with respect to property held in the Victor Kurzweg Trust, her father and brother seek damages for breach of a contract.

That the consent judgment did not memorialize the alleged option agreement does not mean it resolved the issue and now bars a suit brought to enforce that agreement. While the district court correctly observed that the parties had discussed the sale of the Consolidated and other family-corporation stock in the course of their negotiations, the sale of the stock was never an issue in the suit, only a matter of bargaining in the parties' efforts to resolve it. That the parties continued to bargain over the fair market value of the stock for several months after entry of the consent judgment belies any inference that

**22.** *See, e.g., Union Paving Company v. Downer Corporation,* 276 F.2d 468, 469–70 (9th Cir. 1960).

**23.** *Dore v. Kleppe,* 522 F.2d 1369, 1374 (5th Cir.1975).

they intended the judgment to reflect that the option was not to be exercised.

■ · The matters briefed and argued before us on appeal demonstrate, nevertheless, that as to the assets of the Victor Kurzweg Trust, the motion to dismiss was well founded on other grounds. The contract for Gretchen, the beneficiary of the trust, to sell its assets to her father, a co-trustee, violated Article 2085 of the Trust Code and perhaps Article 2083 as well. That is demonstrable on the face of the complaint, which included by attachment both the compromise letter of October 25, 1984, and the consent decree of December 21, 1984.

These vices cannot be remedied by the fact that the agreement would be performed only after Dr. Kurzweg had ceased to be trustee. The parties set the terms of the contract at a time when Dr. Kurzweg had a fiduciary obligation to his daughter, an obligation he violated by negotiating the very terms he now seeks to enforce. Whatever the reasons for the dispute between Dr. Kurzweg and Gretchen as father and daughter, he had a fiduciary duty to her as trustee that exacted the utmost fidelity to her interests without regard to his own. The agreement, moreover, is further tainted. Dr. Kurzweg knew that his daughter did not own the stock and that she was forbidden to alienate the assets, else the very purpose of the spendthrift provision would be violated.

Dr. Kurzweg and Kurzweg, Jr., may not succeed on their belated claim, which neither their complaint nor their initial appellate brief raised, that Gretchen is liable to them for selling what she did not own. Throughout this litigation, they have stood on the validity of the option agreement. Even if the pleadings reveal that Gretchen agreed to sell property she did not own, they also reveal that Dr. Kurzweg must have known of this defect; and Louisiana Civil Code Article 2452 provides that the sale of a thing belonging to another person may give rise to a damage action by the buyer only if he "knew not that the thing belonged to another person." Even if Dr. Kurzweg did not know of the defect in Gretchen's title, moreover, as co-trustee he could not purchase the stock in any event and now may not claim damages as compensation for a transaction he was never entitled to make.

The most likely way in which the option agreement might have been performed was to follow these steps: Dr. Kurzweg exercises his option; he and Gretchen agree on the fair market value of the stock (without the concurrence of the Bank); she demands that the Bank sell the stock; the Bank does not seek the best offer but, acquiescing in her wishes, sells it to her father, by then its former co-trustee, at the negotiated price. To trace that devious course is to expose the vulnerability of the deal and the degree to which it flaunts both the duties of trustees and the restraints inherent in spendthrift trusts.

■ Finally, the alleged oral agreement to sell real property, even if it existed, is clearly unenforceable, for Gretchen has not recognized the transfer under oath as required by Civil Code Article 1839.

For these reasons, the judgment in favor of Gretchen Kurzweg Marple and against Dr. Frank T. Kurzweg and Frank T. Kurzweg, Jr., is AFFIRMED, the appellants to pay her costs. The judgment in favor of the First National Bank of Commerce is also AFFIRMED, the appellants to pay $5,104 to the Bank, without further costs, as a sanction for filing a frivolous appeal.