420 So.2d 691 (1982)
AMERICAN FIDELITY FIRE INSURANCE COMPANY
v.
Dalton T. ATKISON, et al. (Two cases).
Nos. 14958, 14959.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1982.
*692 Hamilton & Carroll by Orlando N. Hamilton, Jr., Oak Grove, for defendant-appellant, James Kiley Thames.
Dawkins, Coyle & Carter by Michael S. Coyle, Ruston, for plaintiff-appellee, American Fidelity Fire Ins. Co.
Dalton T. Atkison and Alice M. Atkison in pro. per.
Before PRICE, HALL and SEXTON, JJ.
HALL, Judge.
This is an appeal from a judgment in favor of plaintiff, American Fidelity Fire Insurance Company, against defendant, James Kiley Thames. Plaintiff, a compensated surety, originally brought two suits against defendants, D. T. Atkison and his wife, to recover sums paid by plaintiff as surety resulting from Atkison's default on two construction contracts. Atkison failed to pay a supplier of pipe used on the projects. Plaintiff later amended its petitions to add Thames as defendant, claiming that Thames and Atkison were parties to a joint venture with respect to the construction contracts and, therefore, Thames was liable for one-half of what plaintiff paid as surety. These cases were consolidated for trial and judgment was thereafter rendered in one of the suits in favor of plaintiff against "the joint venture consisting of Dalton T. Atkison and James Kiley Thames, and in addition against Dalton T. Atkison *693 and Alice M. Atkison, in solido, under the indemnity agreement with plaintiff", in the amount of $93,898.91. Plaintiff's demands against Thames in the other suit were rejected. Defendant Thames appealed from the adverse judgment in favor of plaintiff against the joint venture. Atkison did not appeal and the judgment against him is final.
On appeal, Thames specifies three errors: (a) that the judgment against the joint venture is improper because the joint venture was neither made a party to this suit nor served with process; (b) that the trial court erred in finding a joint venture in fact between Atkison and Thames; and (c) alternatively, that any such joint venture, if extant, was between Atkison and Thames Construction Company, Inc. Additionally, appellant argues that plaintiff is not entitled to legal subrogation to the rights of the material supplier which it paid against Thames.
The Joint Venture
The existence of a joint venture is determined by the intent of the parties as manifested by their agreement, express or implied. A joint venture exists when the parties have contributed capital, labor, skill, and industry in a common effort with a view to participate in expected profits and to share losses. Penn v. Burk, 244 La. 267, 152 So.2d 16 (1963). This intent is in turn determined by the particular facts and circumstances of each case. Gilbeau v. Liberty Mutual Insurance Company, 324 So.2d 571 (La.App. 1st Cir. 1975).
In the instant case, the trial judge found that the evidence established that a joint venture did exist between defendants. An appellate court should not disturb such a finding of fact unless the record establishes that the finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Thames contends on appeal that the trial judge committed manifest error. He contends that it was the intention of the parties to form a corporation to carry out this project and this was never accomplished. He asserts he was no more than a project foreman who was paid a salary for his services and points out that business relevant to the projects was done in Atkison's name only.
We find, however, that the evidence is contrary to appellant's position and supports the trial court's conclusion. The testimony of Stanley M. Cothren, engineer on the project, although attacked as being biased by counsel for appellant in light of the witness's long-term association with Atkison, appears to be that of a competent, disinterested witness. Cothren testified that Thames told Cothren that the former and Atkison were joint venturers. Two exhibits, admitted into evidence in conjunction with Cothren's testimony, support the above contention. A letter from D. T. Atkison Company in response to the witness's request concerning the project, was signed "James Kiley Thames." Similarly, a notice to proceed, was accepted "D. T. Atkison by James Kiley Thames."
Atkison testified that he was to receive 60 percent of the profits from the jobs, while Thames would get 40 percent. Atkison also testified that the parties did not expect to lose any money on the jobs. Thus, the fact that no agreement concerning the sharing of losses was made is inconsequential here because losses were not contemplated. See Fossier v. American Printing Company, Ltd., 130 So.2d 529 (La.App. 4th Cir. 1961). Particularly relevant here are checks admitted into evidence in conjunction with Atkison's testimony which show that money he paid to Thames was described as a "draw", and no withholding or social security was deducted from this money. Atkison's testimony also showed that the equipment and the employees of both parties were used on these jobs.
However, most damaging to appellant's assertion is his own testimony, corroborated by that of his wife. Thames admitted to discussing forming a corporation with Atkison. He also admitted to jointly preparing bids with Atkison. Finally, Thames revealed that the contracts were bid in Atkison's name alone because Atkison had bonding capacity, and that the parties intended *694 later to subcontract the job to the as yet unformed corporation. The facts of the instant case are similar to those in Gilbeau, supra, wherein a joint venture was found to exist when the parties in question (1) agreed to share the profits of their labors; (2) jointly prepared a bid for a construction job; and (3) used both parties' employees and equipment in performing the job.
The trial judge correctly concluded that a joint venture did in fact exist between Atkison and Thames. His ruling will not be disturbed.
Counsel for Thames contends in the alternative that any joint venture, if extant, was between Atkison and Thames's corporation. The trial judge did not respond to this contention in his reasons for judgment. However, the evidence in the record refutes appellant's claim. Although Thames testified that he always does business in corporate form, that the parties were aware of this fact because they all were in possession of a business card identifying Thames as the president of his corporation, and that he deposited his earnings from the two jobs in a corporate bank account and later paid himself a salary out of the funds deposited in this account, the bulk of Thames's testimony indicates that he and not his corporation, would own an equity interest in the corporation intended by him and Atkison and that Thames planned to transfer the assets of Thames, Inc. to this new corporation. Therefore, the facts supporting Thames's assertion are insufficient to warrant disturbing the judgment below on this point.
Proper Party Defendant
Appellant contends that the judgment below is invalid because it was rendered against the joint venture, an entity not made a party to the suit in question. LSA-C.C.P. Arts. 688; 737; 1201. This contention is correct; the judgment should and will be corrected to this extent.
Moreover, appellant's argument that the joint venture is the proper party defendant in this suit lacks merit. As a general rule joint ventures are governed by the law of partnership. Marine Services, Inc. v. A-1 Industries, Inc., 355 So.2d 625 (La.App. 4th Cir. 1978).[1] Although appellant correctly contends that a partnership creditor must, pursuant to LSA-C.C.P. Art. 737, sue the partnership to enforce a partnership debt, this contention presupposes the existence of a viable partnership. The joint venture here ended when the joint venture was no longer able to perform the obligations under the construction contracts. An entity such as this one ends when its object is no longer attainable. LSA-C.C. Art. 2876. The entity in question terminated upon default on the two contracts and at the time this suit was brought was no longer in existence. While it has been held that a partnership remains a legal entity after termination for liquidation purposes, it is also clear that the former partners have the right in their individual capacity to enforce their partnership interest or to defend claims against the partnership. Cambre v. St. Paul Fire and Marine Insurance Company, 331 So.2d 585 (La.App. 1st Cir. 1976); Johnson v. Iowa Rice Dryer, Inc., 226 So.2d 194 (La.App. 3d Cir. 1969). The proper parties defendant to this suit, therefore, are the parties to the joint venture in their individual capacity, rather than the defunct joint venture.
Subrogation
Counsel for appellant claims that because Thames is not a party to the surety contracts involved in this suit, plaintiff is not entitled to subrogation from Thames. Specifically, appellant contends that plaintiff was not entitled to judgment against Thames by virtue of legal subrogation as alleged in plaintiff's original petition. Appellant *695 asserts that legal subrogation as defined by LSA-C.C. Art. 2161(3) presupposes the existence of a solidary obligation between the surety and Thames. Appellant contends that he was not obligated in solido with plaintiff or with Atkison. According to appellant, as party to a joint venture Thames should be treated as partner to an ordinary partnership, LSA-C.C. Art. 2826, and therefore liable only for his virile share of partnership debts. LSA-C.C. Art. 2872.
Plaintiff's subrogation claim emanates from the additional form of legal subrogation authorized by the Civil Code articles on suretyship. These provisions grant the surety who has paid the debt its
"remedy against the principal debtor, whether the security has been given with or without the knowledge of the debtor." [LSA-C.C. Art. 3052]
and further grant to the surety
"the same privilege of subrogation, which the law grants to codebtors in solido" [LSA-C.C. Art. 3053]
Therefore, plaintiff, as surety, was entitled to subrogation against its principal or debtor upon payment of the debt under the surety bond. A remaining question is whether the surety agreement between appellee and D. T. Atkison Company binds appellant, who is not specifically named as a party thereto.
As mentioned above, the trial court correctly concluded that Atkison and Thames contracted as a joint venture to perform the two jobs, and, therefore, Atkison and Thames were parties to a joint venture prior to default on the contracts.
Necessary to the work of this venture was Atkison's obtaining a surety bond to secure performance of the contracts. Thus, although the surety agreement was in Atkison's name alone, the contract was entered into for the benefit of the joint venture. Each partner to an ordinary partnership has the power to bind his partners for partnership debts absent an agreement to the contrary. LSA-C.C. Art. 2870. This power applies, irrespective of any agreement concerning management, when a partner contracts a debt in his own name if the partnership is benefited by the transaction. LSA-C.C. Art. 2874.
Because the joint venture required the surety bond in order to begin work on the two projects, the joint venture benefited from Atkison's contracting to obtain the bond, and, obviously, the bond was obtained with Thames's knowledge and consent. Thus, any obligation arising under the surety agreement is a partnership obligation. We therefore conclude that Thames is bound by the surety agreement entered into for the benefit of the joint venture. Appellee was subrogated to the rights of the creditor material supplier against the joint venture and upon termination of the joint venture, against each party or partner thereto for his virile share of the debt. Upon dissolution of an ordinary partnership, each former partner is liable for his virile share of partnership debts. LSA-C.C. Art. 2872.
Conclusion
As previously noted, the judgment against the terminated joint venture which was not made a party is not appropriate. Further, although it seems apparent that it was intended that the judgment against the joint venture for the full amount of the debt paid by the surety have the effect of casting Thames for his virile share of the debt, the wording of the judgment is not clear.
Accordingly, the judgment is amended to grant judgment in favor of plaintiff, American Fidelity Fire Insurance Company, against defendant, James Kiley Thames, for $46,949.45, with legal interest thereon from date of judicial demand until paid, and one-half of the costs of this proceeding. As amended, the judgment is affirmed. Appellant is cast for the cost of appeal.
Amended, and as amended, affirmed.
NOTES
[1] The events giving rise to this litigation took place prior to January 1, 1981, the effective date of Act 150 of 1980 which revised, amended and reenacted the articles of the Civil Code relative to partnerships. Accordingly, this case is governed by the articles in effect prior to January 1, 1981 and references in this opinion are to the Civil Code articles effective prior to the revision.